IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>GEORGE CORBETT,<br><br>Defendant. | No. 09-CR-28-CJW-MAR<br><br>**ORDER** |

_____

This matter is before the Court on defendant's Motion for First Step Act § 404 Relief. (Doc. 265). The Court had previously granted defendant's pro se motion for appointment of counsel, finding defendant was potentially eligible for relief under the Act. (Doc. 249). The Court thereafter set a briefing schedule. (Doc. 253). Defendant, through counsel, filed his brief with supporting documents. (Docs. 265-1 through 265-8). The government filed a response. (Doc. 266). Defendant filed a reply. (Doc. 269). For the following reasons, the Court **grants** defendant's motion.

### I.    BACKGROUND

In July 2009, a grand jury charged defendant with one count of conspiracy to distribute 50 grams or more of cocaine base in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; distribution of cocaine base in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B); and conspiracy to launder monetary instruments in violation of Title 18, United States Code, Section 1956(h). (Doc. 44).

In July 2009, defendant pled guilty to the drug and money laundering conspiracy counts of the Superseding Indictment. (Doc. 70). On the drug count, defendant faced a

minimum statutory term of imprisonment of 10 years and a maximum statutory term of imprisonment of life. (Doc. 68, at 3). Defendant faced a maximum statutory term of imprisonment of 20 years on the money laundering count. (Doc. 68, at 3). Applying the 2009 edition of the sentencing guidelines, the presentence investigation report (PSR) recommended that defendant be held responsible for at least 2.65 kilograms of cocaine base, which resulted in a base offense level of 36. (PSR ¶ 56). The PSR also recommended a two-level enhancement for possession of a dangerous weapon. (PSR ¶ 57). As to the money laundering count, the PSR recommended a base offense level of 38, with a two-level increase for defendant having been convicted of a Section 1956 offense. (PSR ¶¶ 62-63). The PSR recommended a two-level reduction for acceptance of responsibility because defendant did not enter his plea until shortly before the scheduled trial date, rendering him ineligible for an additional level reduction. (PSR ¶ 70). The PSR thus recommended a total offense level of 38. (PSR ¶ 73).

Despite being only 22 years old at the time of sentencing, defendant had been adjudicated delinquent for, or convicted of, crimes on 48 occasions. (PSR ¶¶ 74-122). This resulted in 31 criminal history points, only 19 of which were scored due to the application of USSG §4A1.1(c), resulting in criminal history category of VI. (PSR ¶¶ 123-126). With a total offense level of 38, and a criminal history category of VI, defendant's guidelines range of imprisonment was 360 months to life. (PSR ¶ 198).

At the sentencing hearing in February 2010, the contested issues included the drug quantity, whether defendant had sold drugs to an undercover officer, whether defendant possessed one or more firearms in connection with the drug offense, and acceptance of responsibility. (Doc. 127, at 6). After presentation of evidence, the Court found that defendant was responsible for between 500 grams and 1.5 kilograms of cocaine base, which resulted in a base offense level of 34. (Doc. 128, at 11). The Court further found that defendant possessed at least one firearm in connection with the drug trafficking

offense and that defendant had failed to accept responsibility for his offense and all relevant conduct. (*Id.*). The Court found that defendant's total offense level was 38 and that his criminal history category was VI. (*Id.*, at 12). These calculations led to an advisory guidelines range of imprisonment of 360 months to life and supervised release of five years on the drug count. (*Id.*).

At the sentencing hearing, the government stated the Department of Justice's position that Congress and the United States Sentencing Commission should eliminate the disparity between crack and powder cocaine, noted that defendant's case was one that could be impacted by the elimination of that disparity, and asked the Court to exercise its discretion to fashion a sentence consistent with Title 18, United States Code, Section 3553(a). (Docs. 93-2, at 4-5 & 128, at 12). The Court acknowledged it had the authority to vary downward from the advisory guidelines range based on the crack/powder disparity but found that such a variance was not appropriate in defendant's case. (Doc. 128, at 14). The Court sentenced defendant to 360 months' imprisonment, the bottom of the advisory guidelines range, and five years' supervised release on the drug count. (*Id.*, at 15). It also sentenced defendant to concurrent terms of 240 months' imprisonment and three years' supervised release on the money laundering count. (*Id.*).[1]

Defendant appealed his sentence. (Doc. 109). On October 20, 2010, the Eighth Circuit Court of Appeals affirmed the Court's sentence. (Docs. 138 & 139).

On November 16, 2011, on its own motion, the Court applied Guidelines Amendment 750 to reduce defendant's sentence under Title 18, United States Code, Section 3582(c)(2) and USSG §1B1.10. (Doc. 158). Based on an amended guidelines

---

[1] The 240-month sentence on the money laundering charge is tied to the guidelines calculation on the drug trafficking charge because under the applicable Guidelines Section 2S1.1(a)(1), the base offense level for money laundering is the base offense level for the underlying offense. Here, defendant's base offense level for the drug offense was 38, based on drug quantity. (PSR ¶ 62).

3

range of 324 to 405 months' imprisonment, the Court reduced defendant's sentence on the drug count to 324 months' imprisonment. (*Id.*, at 3). The remainder of defendant's sentence remained unchanged. (*Id.*, at 4).

In November 2014, defendant filed a pro se motion to reduce sentence under Guidelines Amendment 782. (Doc. 193). The government responded to defendant's motion, arguing that, although defendant was eligible for a sentence reduction under the amendment, a sentencing reduction was not appropriate due to the aggravating factors in defendant's case. (Doc. 197). After holding a hearing at which defendant presented evidence of his progress in the Bureau of Prisons, the Court found that a further reduction in sentence was unwarranted. (Doc. 215, at 15). The Court noted that defendant's sentence of 324 months' imprisonment would have been within the 262 to 324 months' range contemplated by Amendment 782. (*Id.*, at 15-16). Due to defendant's aggravating criminal history, the Court found that defendant was at a high risk to recidivate and that he "is a public safety risk," and it denied his motion. (*Id.*, at 15-16). Defendant appealed the Court's denial of his motion, and his appeal was denied. (Doc. 207, 218-19). Defendant filed additional pro se motions to reconsider or reduce his sentence in 2016 (Doc. 224), 2018 (Doc. 228), and 2019 (Doc. 232). The Court denied the 2016 and 2018 motions. (Docs. 225 & 229). In response to the 2019 motion, the Court appointed counsel and set a briefing schedule. (Docs. 249 & 253). Defense counsel filed a motion to withdraw defendant's pro se motion, stating that defendant desired not to pursue First Step Act Section 404 relief at that time. (Doc. 254). The Court granted the motion to withdraw in October 2020. (Doc. 255).

On April 4, 2023, defendant filed the instant motion for relief. (Doc. 265).

## II. THE FIRST STEP ACT

Congress enacted the First Step Act ("FSA") on December 21, 2018. The statute was part of a compressive criminal justice reform package and makes numerous changes to the criminal code, including reducing some mandatory minimum sentences, changed other sentencing ranges, and also changed how compassionate release motions are filed. Section 404 of the FSA provides that a court may, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id.* § 404(b); *see also* 18 U.S.C. § 3582(c)(1)(B). The FSA defines a "covered offense" as any crime which had its penalties modified by Section 2 or 3 of the Fair Sentencing Act of 2010. *Id.* § 404(a). Section 2 of the Fair Sentencing Act modified the statutory penalties for certain violations of Title 21, United States Code, Section 841(b) related to cocaine, effectively reducing the penalty applicable to a qualifying defendant. *See also United States v. McDonald*, 944 F.3d 769, 771 (8th Cir. 2019). Neither the FSA nor the Federal Rules of Criminal Procedure require a hearing, nor the defendant's presence at such a hearing. *United States v. Williams*, 943 F.3d 841, 844 (8th Cir. 2019).

## III. DISCUSSION

Both defendant and the government agree that defendant is eligible for relief under the FSA. (Docs. 265-1, at 4-5 & 266, at 7). The Court agrees that defendant is eligible for relief because he was convicted of a crack cocaine offense before 2010. Once a court has determined that a defendant is eligible for relief under Section 404, the next question is whether the court should exercise its discretion to grant relief. *McDonald*, 944 F.3d at 772.

Defendant argues that the Court should exercise its discretion to reduce his sentence and term of supervised release. (Doc. 265-1, at 5-16). Defendant emphasizes that he has served about 14 years of his 27-year sentence. (*Id.*, at 5). Defendant argues

5

that under Amendment 782, defendant would be looking at a sentencing range of 262-327 months, and a four-year term of supervised release. (*Id.*, at 6). Defendant also urges the Court to adopt a 1:1 crack cocaine to powder cocaine ratio, that would result in an advisory guidelines range of 140-175 months. (*Id.*, at 7-9). Defendant argues that a sentence of 175 months would be appropriate, considering the Section 3553(a) factors, emphasizing his young age at the time he committed the instant offense and all his prior offenses. (*Id.*, at 9-12). Defendant also notes efforts he has made toward rehabilitation while incarcerated, including furthering his education and training and limited disciplinary violations, especially within the last two years. (*Id.*, at 12-15).

The government resists defendant's motion. (Doc. 266). The government emphasizes that the Court already reduced defendant's sentence to 324 months, which is the bottom of the advisory guidelines range had the First Step Act been in effect at the time he was sentenced. (*Id.*, at 8). As for the 1:1 crack to powder ratio, the government acknowledges that the Department of Justice's policy supports that ratio, but urges the Court nevertheless to exercise its discretion to deny defendant a further reduction in his sentence because of the aggravating nature of defendant's criminal conduct and his history and characteristics. (*Id.*, at 8-11). The government emphasizes the large quantity of drugs defendant trafficked, his possession of a firearm in connection with that drug trafficking, and his false denials at the sentencing hearing. (*Id.*, at 9). The government likewise recounts defendant's very lengthy and recidivist criminal history and poor performance while incarcerated. (*Id.*, at 9-10).

Were the Court to apply the 1:1 crack to powder cocaine ratio, defendant's base offense level if sentenced today would be 24. USSG §2D1.1(c)(8).[2] Defendant received

---

[2] The Court found defendant responsible for at least 500 grams but less than 1.5 kilograms of cocaine base. (Doc. 128, at 11). Guidelines Section 2D1.1(c)(8) provides a base offense level

a 2-level enhancement for possession of a firearm (PSR ¶57), providing an adjusted offense level of 26. Because defendant was also convicted of money laundering, there would be another 2-level enhancement under Guidelines Section 2S1.1(b)(2)(B), for a total offense level of 28. The Court found defendant frivolously contested offense conduct and failed to accept responsibility, so defendant would not receive a reduction for acceptance of responsibility. Defendant had 19 criminal history points based on his prior convictions, placing him in Criminal History Category VI. (PSR ¶ 123).[3] So, with a total offense level 28, Criminal History Category VI, defendant's advisory guidelines range today, applying the 1:1 ratio, would be 140-175 months. Defendant asks the Court to reduce his sentence to "*no more* than 175 months and four years' supervised release." (Doc. 265-1, at 9 (emphasis defendant's)).

      Considering all the factors at Title 18, United States Code, Section 3553(a), the Court chooses to exercise its discretion to reduce defendant's sentence. The Court finds it appropriate to apply the 1:1 crack to powder cocaine ratio. That is the Department of Justice's own position, and it is well-founded. Nevertheless, the Court finds a sentence within the advisory guidelines range would apply given that ratio fails to achieve the goals of sentencing given this offender's history and characteristics. Defendant's egregious criminal history suggests that defendant was dangerous and is very likely to reoffend

---

of 24 where the amount of cocaine involved in the offense is at least 500 grams but less than 1.5 kilograms.

[3] This is so even if the Court applied the retroactive changes to Guidelines Section 4D1.1(d), which would reduce by 1 criminal history point the 2 points he received for committing the instant offense while under a criminal justice sentence, and even if the Court did not apply the 1 point he received for committing this offense less than two years after release from prison under Guidelines Section 4A1.1(e). (PSR ¶ 125). Defendant needed only 13 criminal history points to fall in Criminal History Category VI.

when released.[4]  Were the Court to sentence defendant today, it would vary upward from the advisory guidelines sentence because of defendant's criminal history and recalcitrant and unrepentant behavior.  Moreover, defendant's performance while incarcerated has been very poor, involving assaults and weapons along with other less serious violations, showing that he has not changed much over time.  Taking into account all the factors at Title 18, United States Code, Section 3553(a), the Court finds that a sentence of 240 months would be sufficient but not greater than necessary to achieve the goals of sentencing.  That would still be 84 months less than the 324 month sentence defendant is now serving.

## IV.   CONCLUSION

For the reasons stated, the Court **grants** defendant's motion for First Step Act § 404 relief.  (Doc. 265).  Defendant's sentence is reduced by 84 months (but not less than time served), followed by a five-year term of supervised release.[5]

It does not appear the reduction granted by this order will result in defendant's immediate release, but in the event it would, the Court would stay implementation of the order for 21 days so both the BOP and United States Probation Office will have time to prepare for defendant's release.

All other provisions of the original sentence and judgment remain in effect except as modified herein.

---

[4] By the Court's count, defendant had 49 prior convictions, 38 of which he committed while on probation or parole, and he committed the federal offenses while on probation or parole.  (PSR, at 17-53).  Of those, three involved violent assaults.  Defendant's convictions resulted in 19 criminal history points despite the fact that 33 of his convictions scored no points, and 12 of his convictions scored 1 point each, only 4 of which counted toward his criminal history calculation.  (*Id.*).

[5] The Court acknowledges that defendant also requested the Court reduce his term of supervised release by one year, but the Court declines to do so, given defendant's serious and recidivist criminal history.

The Clerk's office is directed to send a copy of this order to the place where defendant is confined.

**IT IS SO ORDERED** this 22nd day of December, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa